UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARTY CALDERON and          :
CHRISTOPHER SANTOS,         :
        Plaintiffs          :
                            :    PRISONER CASE NO.
        v.                  :    3:04-cv-1562 (JCH) (HBF)
                            :
STATE OF CONNECTICUT DEP'T  :
OF CORRECTIONS, et al.,[1]  :
        Defendants          :    SEPTEMBER 1, 2006

**RULING ON PENDING MOTIONS**

The plaintiffs, Marty Calderon and her son Christopher Santos, an inmate at

Northern Correctional Institution in Somers, Connecticut, filed this action pro se

pursuant to 42 U.S.C. §§ 1981 and 1983 and 18 U.S.C. §§ 4048, 4082.   Calderon

claims that the defendants have denied her the opportunity to visit with her son from

February 2003 to July 2004.   Santos alleges, inter alia, that the defendants failed to

protect him from assault by another inmate, failed to provide him with adequate medical

treatment for his injuries due to the assault, and denied him visitation with his mother.

On August 29, 2005, the court granted plaintiffs' motion for leave to file a second

amended complaint, dismissed the claims against Department of Correction and

Northern Correctional Institution pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and the claims

against Warden Choinski pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and granted the

plaintiffs thirty days in which to file a third amended complaint.   The latter was

conditioned on the plaintiffs' ability to assert specific factual allegations and legal claims

---

[1] The complaint named as defendants the State of Connecticut Department of
Corrections, Warden Wayne Choinski and Northern Correctional Institution.   On
October 24, 2005, the plaintiffs filed a third amended complaint naming Commissioner
Theresa Lantz, Warden Wayne Choinski, Lieutenant Wayne Dumas, Correction Officer
Paul Barselau and Dr. Carson Wright as defendants.

against individuals who were responsible for the alleged failure to protect Santos from assault by another inmate in August 2003, failure to provide Santos with adequate medical treatment for his injuries due to the assault, use of mace against Santos, denial of access to Santos' inmate account funds, retaliation against Santos for filing this action and a habeas petition, and deprivation of Calderon's right to visit her son.  The court also ordered the plaintiffs that any amended complaint demonstrate exhaustion of Santos' claims against the named defendants pursuant to the prison grievance procedures.

On September 7, 2005, the plaintiffs filed a motion for leave to file a third amended complaint.   Pursuant to a telephone status conference held on October 5, 2005, the court directed the Clerk to docket the defendants' memorandum in opposition to plaintiffs' motion for leave to amend as a motion to dismiss the proposed third amended complaint.   On October 24, 2005, the court granted the plaintiffs' motion for leave to file a third amended complaint.   The third amended complaint names Commissioner Theresa Lantz, Warden Wayne Choinski, Lieutenant Wayne Dumas, Correction Officer Paul Barselau and Dr. Carson Wright as defendants.  [Doc. No. 48].

Pending before the court is the defendants' opposition to the plaintiffs' previously granted motion for leave to amend their complaint [Doc. No. 46], which the court has treated as a Rule 12(b)(6) motion to dismiss; the plaintiffs' motion to substitute and transfer plaintiff Christopher Santos legal interest in this action to plaintiff Marty Calderon [Doc. No. 43]; the plaintiffs' motion for reconsideration of the court's Rule 41(a) notice [Doc. No. 51]; the plaintiffs' motions to appoint counsel [Doc. No. 57 & 58]; the defendants' Rule 41(b) motion to dismiss [Doc. No. 52]; the plaintiffs' motion for

2

extension of time in which to respond to the Rule 41(b) motion to dismiss [Doc. No. 61]; and the plaintiffs' motion to compel [Doc. No. 63].

## I.    RULE 12(b)(6) MOTION TO DISMISS [Doc. No. 46]

### A.    Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003).  Dismissal is inappropriate unless it "appears beyond doubt that [the plaintiff] can prove no set of facts in support of [his] claim which would entitle [him] to relief."  Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 654 (1999); Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  York v. Ass'n of  Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer, 416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

3

**B.    Facts[2]**

Santos is an inmate who was incarcerated at the Northern Correctional

Institution ("Northern") from August 2001 through April 2005.  Calderon is the mother of

Santos.

In August 2001, another inmate assaulted Santos, and he suffered further

trauma to pre-existing facial and head injuries.  In December 2001, Santos' attorney

wrote to the Medical Department at Northern asking that he be transferred to Garner

Correctional Institution for mental health treatment.   Prison officials did not transfer him

to Garner until April 2005.  In March 2002, Santos slipped and fell in the shower and

suffered injuries to his back.   In July 2002, another inmate bit and scratched Santos,

and he required medical treatment.

In September and October 2002, Santos requested medical treatment from

defendant Dr. Carson Wright for chest, back and genital pain as well as severe

headaches.    Santos alleges that Dr. Wright did not see him when medically

necessary.  In February 2003, Santos requested to review results of x-rays of his back

and left knee and requested new x-rays of his back and knee.  Santos requested

medical treatment from Dr. Wright in June and August 2003.   Santos alleges that

medical personnel denied his request to see Dr. Wright on one occasion in March 2004.

On January 8, 2003, Santos defended himself against an assault by another

inmate and suffered an injury to his eyes as a result of a chemical agent deployed by

---

[2]For the purposes of deciding this motion, the court assumes that the following
allegations, taken from the third amended complaint, are true.

prison officials.   On July 3, 2003, prison officials deployed a chemical agent into Santos' eyes, thereby causing injury, as well as assaulting him in the face, leaving a contusion around the left eye and scratches to his arm and back.

On August 30, 2003, Dumas and Barselau placed Santos in handcuffs and then escorted another inmate, who was known to be dangerous, to Santos' cell.  Dumas and Barselau uncuffed the new inmate while Santos was still handcuffed.  The new inmate assaulted Santos while Santos was handcuffed.  Dumas watched the assault and failed to intervene.   Santos suffered serious physical injuries as a result of the assault and received medical treatment on September 2, 2003.   Santos has taken a prescription pain medication since the assault.  As a custom and practice, the defendants permitted handcuffed inmates at Northern to be assaulted by other inmates, and the defendants encouraged such assaults by subjecting certain inmates to ridicule.  In the year following Santos' assault, another inmate at Northern complained to Warden Choinski that he had been assaulted by an inmate while he remained in handcuffs.

Correctional staff broke Santos' glasses when they packed up his property after the August 30, 2003 altercation.

Calderon was emotionally distressed when she viewed her son's injuries after the August 2003 assault.   She sent a letter to Warden Choinski in July 2004, seeking medical treatment for her son.   Calderon claims that she has incurred expenses due to her son's injuries and medical needs and will incur similar expenses in the future.

On February 4, 2004, correctional officers called a Code Blue, ran into the cell, and tackled Santos to the floor and sprayed mace into the cell.   Santos suffered facial injuries.

The plaintiffs allege that, between February 2003 and July 2004, the defendants prevented Calderon from visiting Santos because the plaintiffs are Hispanic. Correctional officers informed Calderon that she could not visit her son regularly because prison officials had imposed disciplinary sanctions against him.

Santos generally claims that prison officials have subjected him to verbal insults in retaliation for filing this lawsuit and a petition for writ of habeas corpus concerning conditions of confinement at Northern and denied him access to any legal assistance his mother could provide to him because they would not permit him to visit with his mother.

The plaintiffs seek monetary damages from the defendants.

C.    **Discussion**

Defendants move to dismiss the amended complaint on seven grounds:  (1) many claims are barred by the statute of limitations; (2)  Santos has not exhausted his administrative remedies; (3) the plaintiffs have no constitutional right to visitation; (4) plaintiffs' equal protection and racial discrimination claims are legally insufficient; (5) Santos' claim of deprivation of property, claim of denial of medical care and claim of denial of access to courts fail to state claims upon which relief may be granted; (6) the plaintiffs fail to allege facts demonstrating the personal involvement of Choinski, Lantz or Wright in the alleged unconstitutional conduct.  As a preliminary matter, the court will address the plaintiffs' claims brought pursuant to 18 U.S.C. §§ 4048 and 4082.

Title 18 of the United States Code is entitled Crimes and Criminal Procedure and relates to federal crimes and federal criminal procedure.   Part III of Title 18 is entitled Prisons and Prisoners.  Included within Part III are 18 U.S.C. § 4048 and 18 U.S.C. §

6

4082.   Section 4082 governs the Attorney General's obligation to provide certain information to law enforcement agencies of a state or local government about prisoners who have been convicted of felonies against the United States and are confined at a residential community treatment center.   Section 4048 provides that the Director of the Bureau of Prisons may assess and collect fees for health care services provided to prisoners incarcerated in a federal prison facility or charged with or convicted of a crime against the United States.  The plaintiffs also claim to file this action pursuant to 28 C.F.R. § 541.22.  This section of the Code of Federal Regulations governs the placement of inmates confined in federal prison facilities in administrative detention.

Neither of these statutes nor this section of the Code of Federal Regulations are applicable to Santos, who was convicted in state court of violating state criminal statutes and is confined in a state prison facility, or Calderon, who is not currently incarcerated in either state or federal prison.  Nor does either statute appear to provide a private right of action.   Accordingly, the claims filed pursuant to these statutes and this section of the Code of Federal Regulations are dismissed as lacking an arguable basis in fact or law.

### 1.    Santos' Claims

The plaintiffs have asserted various other claims against the defendants.  The court will address the claims of Santos first.

### a.    Claims Barred By Statute of Limitations

Santos claims that, in August 2001, another inmate assaulted him, and he suffered further trauma to pre-existing facial and head injuries.  In December 2001,

7

Santos' attorney wrote to the Medical Department at Northern asking that Santos be transferred to Garner Correctional Institution ("Garner") for mental health treatment, but prison officials failed to transfer him to Garner until April 2005.  In March 2002, Santos slipped and fell in the shower and suffered injuries to his back.   In July 2002, another inmate bit and scratched Santos, and he required medical treatment.

The defendants argue that these claims are barred by the three-year statute of limitations.

In Connecticut, the general three-year personal injury statute of limitations period, set forth in Connecticut General Statutes § 52-577, has been uniformly found to apply to federal civil rights actions.  See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994) (applying Connecticut's three year statute of limitations to actions brought pursuant to 42 U.S.C. § 1983); In re State Police Litig., 888 F. Supp. 1235, 1248-49 (D. Conn. 1995) (same).  Santos filed his third amended complaint on September 7, 2005. The new allegations in this amended complaint – concerning an assault by another inmate in August 2001, failure to transfer Santos to a different facility for mental health treatment prior to September 7, 2002, a slip and fall in the shower in March 2002 assault by another inmate in July 2002, and certain unfulfilled requests for medical treatment – occurred more than three years before the filing of the instant third amended complaint.

Although the plaintiffs could have timely asserted all of these allegations, except for the August 2001 assault, in their original Complaint of September 17, 2004 [Doc. No. 1], they did not do so.  The new allegations do not relate back to the original Complaint, because they did not arise "out of the conduct, transaction, or occurrence

8

set forth or attempted to be set forth in the original pleading," Fed.R.Civ.P. 15(c)(2), and

because they would likely require the defendants "to gather different facts, evidence

and witnesses to defend the amended claim" from those they would gather to defend

the original claim, <u>Alswanger v. Smego</u>, 257 Conn. 58, 65 (2001) (describing

Connecticut's "relation back" doctrine); <u>see</u> Fed.R.Civ.P. 15(c)(1).

      A few of Santos' otherwise untimely claims could be considered timely under the

"continuing violation" doctrine.  "The continuing-violation exception extends the

limitations period for all claims of [unlawful acts] committed under [an ongoing illegal

policy or practice] even if those acts, standing alone, would have been barred by the

statute of limitations." <u>Annis v. Cty. of Westchester</u>, 136 F.3d 239, 246 (2d Cir.1998)

(internal quotation marks and citation omitted).  However, "a continuing violation is

occasioned by continuing unlawful acts, not by continued ill effects from the original

violation." <u>Chambers v. Waterbury Police Dep't</u>, 3:02-cv-02050(AWT), 2003 WL

1986932, at *2 (D.Conn. Apr. 17, 2003) (quoting <u>Doe v. Blake</u>, 809 F.Supp. 1020, 1025

(D.Conn.1992)).  Construing the Third Amended Complaint liberally, it alleges that

defendants' failures to transfer Santos to Garner so that he could receive mental health

treatment during the period of time from December 2001 to September 7, 2002 were

part of a campaign of deliberate indifference to his mental health needs that continued

until his transfer in 2005.  The assaults by other inmates in August 2001 and July 2002

might also be inferred to be a result of the defendants' alleged practice of subjecting

certain inmates to ridicule, thereby encouraging assaults by other inmates.  Therefore,

the continuing violations doctrine would permit Santos and Calderon to assert claims

based on these facts.  Santos' other claims concerning events prior to September 7,

2002, however, are not subject to the continuing violations doctrine, and Santos has alleged no facts that would support tolling the statute of limitations for those claims. Thus, the motion to dismiss those claims as barred by the statute of limitations is granted.

### b.    Failure to Exhaust Remedies as to Remaining Claims

Defendants argue that the case should be dismissed as to those claims not barred by the statute of limitations because Santos has failed to provide evidence of exhaustion of his administrative remedies, as directed by the court in its August 29, 2005 Ruling.   Santos concedes that he did not exhaust his administrative remedies, but contends that he is not required to do so because he seeks monetary compensation only.  See Plfs.' Mem. Opp. Defs' Rule 12(b)(6) Mot. Dismiss at 1, 9-10 [Doc. No. 47].

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust such "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any federal action about prison life, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances.  Section 6(A) provided that the following matters were grievable:

      1.      The interpretation and application of policies, rules
                and procedures of the unit, division and Department.
      2.      The existence or substance of policies, rules and

procedures of the unit, division and Department . . . .

3.    Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

4.    Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

5.    Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.

6.    Property loss or damage.

7.    Any and all other complaints of any nature concerning prison life.

Connecticut Dep't of Corrections, Administrative Directive 9.6, ¶ 6(A) (2003), available at www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf.

Administrative Directive 9.6 sets forth a specific three-level procedure that inmates must follow when submitting grievances. If attempts to resolve the matter informally are unsuccessful, an inmate can file a Level 1 grievance. See Administrative Directive 9.6 § 10. The Level 1 grievance must be filed within thirty days from the date of the occurrence. See id. If a Level 1 grievance is denied or if correctional officials fail timely to respond to it, the inmate must appeal the denial to Level 2. See id. § 16. The appeal must be filed within five days from the receipt of the decision on the Level 1 grievance. If correctional officials failed to respond to the Level 1 grievance within thirty days, the inmate may file his Level 2 appeal on the thirty-first day. See id. Level 3 appeals are restricted to "[c]hallenges [to] Department level policy ;. . . emergency grievance[s] which cannot be acted upon at a subordinate level; . . . challenge[s] [to] the integrity of the grievance procedure . . ." and Level 2 appeals that do not receive timely responses. Id. § 17. If correctional

11

officials have failed to respond to the Level 2 grievance within thirty days, the inmate

may file his Level 3 appeal on the thirty-first day.  See id.

As a general matter, only after pursuing all three steps of the grievance process

has an inmate "exhausted" his claim.  See generally Woodford v. Ngo, 126 S.Ct. 2378,

2385 (2006) (internal citation omitted) (holding that PLRA requires inmates to "properly"

exhaust administrative remedies before filing suit in federal court, which "means using

all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits)) (emphasis in original).  Defendants have moved to

dismiss on the ground that Santos failed to exhaust administrative remedies.  All of

Santos' claims are included within the list of grievable matters at items 3, 5, 6 or 7.

Exhaustion of administrative remedies is an affirmative defense.  See, e.g.,

Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  Thus, defendants bear the

burden of demonstrating that Santos failed to exhaust his administrative remedies, and

a Rule 12(b)(6) motion to dismiss can be granted only if "the defense appears on the

face of the complaint."  McCoy v. Goord, 255 F.Supp.2d 233, 249 (S.D.N.Y. 2003)

(quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74-75 (2d Cir. 1998)).

The Third Amended Complaint does not explicitly allege that Santos failed to file

grievances for all of the events at issue in this case.  It alleges that he was unable to file

grievances regarding events on January 8, 2003 and July 3, 2003, ¶ 57, 62 [Doc. No.

48-1], but also alleges that "he has filed several grievances" for assaults.  ¶ 5 [Doc. No.

48-1].   The numbered allegations of the Third Amended Complaint do not themselves

establish that Santos failed to exhaust administrative remedies.  However, this court

previously ordered Santos to include evidence of exhaustion in his Third Amended

12

Complaint.  Ruling on Pending Motions of Aug. 29, 2005 [Doc. No. 35].  He has failed to

comply with this order and has not attached any evidence of exhaustion.

The court must nevertheless consider whether Santos has countered the

affirmative defense of exhaustion:

> Depending on the inmate's explanation for the alleged failure to exhaust,
> the court must ask whether administrative remedies were in fact
> "available" to the prisoner. The court should also inquire as to whether the
> defendants may have forfeited the affirmative defense of non-exhaustion
> by failing to raise or preserve it, or whether the defendants' own actions
> inhibiting the inmate's exhaustion of remedies may estop one or more of
> the defendants from raising the plaintiff's failure to exhaust as a defense.
> If the court finds that administrative remedies were available to the
> plaintiff, and that the defendants are not estopped and have not forfeited
> their non-exhaustion defense, but that the plaintiff nevertheless did not
> exhaust available remedies, the court should consider whether "special
> circumstances" have been plausibly alleged that justify "the prisoner's
> failure to comply with administrative procedural requirements."

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (internal citations omitted).

With regard to the availability of administrative relief, Santos states that he did

not need to exhaust his remedies because he cannot obtain money damages through

the grievance procedure.   As indicated above, however, the Supreme Court requires

inmates to exhaust administrative remedies even if they cannot obtain the particular

type of relief they seek through that process, so long as the administrative officials had

authority to provide some relief.  Booth, 532 U.S. at 741.

The court turns to the factors identified in Hemphill.  The plaintiff does not argue

that administrative grievance procedures were routinely unavailable to him, but he does

allege that injuries he sustained on or about January 8, 2003 and July 3, 2003

prevented him from signing medical reports or filing grievances concerning the incidents

that caused those injuries. 3d Am. Compl. ¶¶ 57, 62 [Doc. No. 48-1].  However, he

13

attaches to the Third Amended Complaint an inmate request form he submitted on February 6, 2003, less than thirty days after January 8. Id. at Ex. 18 [Doc. No. 48-1]. This form shows that he was not physically incapacitated for the entire thirty-day period in which he could have filed a grievance for the January 8 incident. See Administrative Directive 9.6 ¶ 10(G); see also Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (permitting consideration, on a motion to dismiss, of documents incorporated in a complaint by reference and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit"). Santos also attaches to the Third Amended Complaint an inmate request he submitted on August 5, 2003. Id. at Ex. 22 [Doc. No. 48-2]. Although August 5 was just over thirty days past the July 3 assault, the August 5 inmate request shows that Santos could have at least sought permission from the Commissioner of the Department of Corrections to file a grievance three days late on the ground that he was physically unable to file in a timely fashion. See Administrative Directive 9.6 ¶ 24 ("Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner."); see also Giano v. Goord, 380 F.3d 670, 679-80 (2d Cir. 2004). Therefore, Santos' allegations are not sufficient to plead unavailability of administrative remedies, estoppel, special circumstances, or any of the other exceptions to the exhaustion requirement. The court therefore dismisses all of his claims for failure to exhaust.

### 2.    Calderon's Claims

Calderon claims that the defendants violated her right to free association when they failed to permit her to visit her son. She also claims the defendants discriminated against her on the basis of race, denied her equal protection, and violated her rights

under state law.

### a.  Visitation/Association Claims

Calderon alleges that the defendants deprived her of her constitutional right of association because they denied her permission to visit with her son from February 2003 and July 2004.

The Supreme Court has held that a non-prisoner's associational rights are no greater than the rights of the prisoner with whom he or she wishes to associate.  See Thornburgh v. Abbott, 490 U.S. 401, 410 n.9 (1989) (holding that the "legitimate penological interests" standard applies to alleged associational infringements on prisoners and non-prisoners alike).  Although the Constitution "protects certain kinds of highly personal relationships," inmates who claim that restrictions on their visitation privileges violated their First Amendment right to association, or their rights under the Eighth or Fourteenth Amendments, must allege facts sufficient to support a finding that the challenged restrictions bear no "rational relation to legitimate penological interests." Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003) (internal citations and quotation marks omitted).  The United States Supreme Court deems four factors relevant in deciding whether a prison rule "affecting a constitutional right that survives incarceration withstands constitutional challenge:  whether the regulation has a ''valid, rational connection'' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation."  Id. at 132 (quoting Turner v. Safley, 482 U.S. 78, 89-91 (1987).

Calderon alleges that she was denied visitation with her son, Santos, during the time period from February 2003 and July 2004 because she and her son are Hispanic, and that she was told that visitation was being denied as a disciplinary sanction.  3d Am. Compl. at ¶¶ 22, 28.  Although denial of Calderon's right to associate or visit with her son for disciplinary reasons would likely constitute a legitimate penological interest, denial of the right to association because of their ethnicity would not constitute a legitimate penological interest.   The possibility that Calderon may be able to provide evidence that the defendants' denial of her right to associate with her son was due to their ethnicity precludes granting the motion to dismiss.

With regard to the defendants' argument that the defendants lacked personal involvement in the alleged deprivation of visitation, the court finds that Ms. Calderon has pled personal involvement adequately for purposes of a motion to dismiss, see 3d Am. Compl. ¶¶ 27 (alleging that "the Defendants" denied visitation rights to Santos), 28 (same), 22 (alleging that Calderon was denied visitation with her son during the same time period mentioned in paragraphs 27 and 28), although the court may revisit this issue should the defendants move for summary judgment.

### b.    Equal Protection Claim

Calderon also claims that the defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).   Calderon's equal

16

protection claim alleges that she could not visit with her son for a period of time in 2003 and 2004, but it does not allege that she was treated differently than other individuals. Accordingly, Calderon has failed to allege a basis to state a claim of a violation of the Fourteenth Amendment's Equal Protection Clause.  The motion to dismiss is granted as to Calderon's equal protection claim.  Given that the plaintiffs have had several opportunities to amend, the court does not grant leave to replead.

### c.  Section 1981 Claims

Calderon alleges that defendants have violated her rights under 42 U.S.C. § 1981 because they discriminated against her on account of her race when they failed to permit her to visit her son in 2003 and 2004.

Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Section 1981 "contemplates protection of those discriminated against on the basis of ancestry or ethnic characteristics . . . ."  Avello v. Hammons, No. 96 Civil 0927 (DAB), 1997 WL 218466, at *7 (S.D.N.Y. April 29, 1997).  Generally, section 1981 is invoked to prohibit racial discrimination in the making and enforcement of private contracts.  See Miller v. CITICORP, No. 95 Civ. 9728 (LAP), 1997 WL 96569, at *8 (S.D.N.Y. March 4, 1997) ("Section 1981 prohibits all racial discrimination in the making

17

of private contracts . . . ."); Philippeaux v. N. Central Bronx Hosp., 871 F. Supp. 640, 654 (S.D.N.Y. 1994) ("[T]here are two separate issues in finding liability under Section 1981:  first whether there has been a substantive violation of plaintiff's right to make contracts based on his race, and second, whether the named defendants can be held liable for that violation"), aff'd, 104 F.3d 353 (2d Cir. 1996), cert. denied, 520 U.S. 1105 (1997); Smith v. Sav. Bank of Rockland County, No. 91 Civ. 3088 (JFK), 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992) ("To violate Section 1981, a defendant must have prevented a plaintiff from making and enforcing contracts").  See also Hon. Charles R. Richey, Prisoner Litigation in the United States Courts 146 (1995) ("Notwithstanding the breadth of its language, the primary thrust of [section 1981] is directed at employment contracts with a racial animus.").

Here, the complaint contains no allegations relating to Calderon entering into a contractual relationship or any other activity specifically referenced in the statute.  Thus, Calderon's reliance on section 1981 appears misplaced.  See Mian v. Donaldson, Lufkin & Jenrette  Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (determining that, to state a claim pursuant to section 1981, plaintiff must allege that he was subject of racial discrimination concerning one or more of the activities enumerated in the statute).

Further, even if the court were to conclude that the Calderon's claim fell within the province of section 1981, she "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) (citations omitted); see, e.g., Odom v. Columbia University, 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995) (holding insufficient to state a claim pursuant to section

18

1981 allegations of racial discrimination and unequal treatment where plaintiff failed to allege a single example of a student treated differently by university).

Calderon fails to include any factual allegations supporting her assertion that the actions of the defendants were racially motivated.  Thus, the motion to dismiss is granted as to any claims brought pursuant to section 1981.

### d.    State Law Claims

Plaintiffs also include claims for violation of the Connecticut Constitution and various state laws, such as, loss of parental consortium and infliction of emotional distress.

Supplemental or pendent jurisdiction is a matter of discretion, not of right.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Where all federal claims have been dismissed before trial, pendent state claims may be dismissed without prejudice and left for resolution by the state courts.  28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  Because the court has dismissed all federal law claims of Santos, it declines to exercise supplemental jurisdiction over Santos' state law claims.   Any state law claims Calderon has asserted on her own behalf remain.

## II.    CONCLUSION

The defendants' Motion to Dismiss [**doc. # 46**] is **GRANTED in part and DENIED in part**.  It is granted as to all federal and state law claims of Santos and all federal claims of Calderon except the claim that the defendants' denied her right to associate with her son because of her ethnicity in violation of the First Amendment and

19

the Due Process clause of the Fourteenth Amendment.  Thus, all claims asserted by Santos are dismissed and the case will proceed only as to Calderon's state law claims and her federal claim that the defendants' denied her right to associate with her son because of her ethnicity in violation of the First and Fourteenth Amendments.  The plaintiffs' motion to transfer Santos' legal interest to Calderon [**Doc. # 43**], Santos' motion to appoint counsel [**Doc. 58**], and the plaintiffs' motion to compel [**Doc. No. 63**] are **DENIED** as moot in light of the court's ruling on the Rule 12(b)(6) motion to dismiss.

Calderon's motion for appointment of counsel [**Doc. No. 57**] is **DENIED** without prejudice because the record does not demonstrate that plaintiff's claims have "some likelihood of merit," even though certain claims have survived the motion to dismiss. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170 (2d Cir. 1989).  The defendants' Rule 41(b) motion to dismiss [**Doc. No. 52**] is **DENIED**.  The plaintiff's motion to reconsider the court's Rule 41(a) notice [**Doc. No. 51**] and the plaintiffs' motion for extension of time in which to respond to the Rule 41(b) motion to dismiss [**Doc. No. 61**] are **TERMINATED** as moot, because the court has dismissed Santos' claims and some of Calderon's claims pursuant to Rule 12(b)(6) and will not dismiss Calderon's remaining claims pursuant to Rule 41(b).

**SO ORDERED.**

Dated this 1st day of September, 2006, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

20